# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

    v.                                    Case No.: 8:20-CR-184-TPB-JSS

**DARWIN MONTANO CUERO**
_____/

## SENTENCING MEMORANDUM IN SUPPORT OF MINOR ROLE OBJECTION AND IN REQUEST OF 18 U.S.C. 3553(a) <u>DOWNWARD VARIANCE TO 78 MONTHS</u>

    Defendant, Darwin Montano Cuero, by and through undersigned counsel, hereby files this written Memorandum of Law in support of his objections to the calculation of his base offense level guideline and his eligibility to a two level minor role reduction pursuant to U.S.S.G. § 3B1.2 as well as other grounds supported by 18 U.S.C. § 3553(a). To that end, Mr. Cuero requests a sentence of 78 months imprisonment. As grounds in support thereof, Mr. Cuero shows as follows:

### *Procedural History*

    Mr. Cuero is charged by Indictment and has pled guilty to the offense of Conspiracy to Possess With Intent to Distribute Five Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46 U.S.C. §§1903(g) and (j), and 21 U.S.C. § 841(b)(1)(A)(ii).

## *Factual Background*

***Mr. Cuero suffered extreme poverty and physical and sexual abuse. He was sexually assaulted by a guerilla soldier who was a member of FARC, the Revolutionary Armed Forces of Colombia, which is a violent Marxist rebel group that has terrorized Columbia for decades.***

Terror and severe poverty have been a constant companion of Mr. Cuero since his youth in Mosquera, Columbia. Fatherless, he was raised by a single mother along with eight (8) siblings. His father beat his mother and he abandoned the family early in Mr. Cuero's life.

The family lived in a wood house with one (1) room, no running water and no electricity. Food was scarce and the children often went hungry. Clothes consisted of a single shirt and torn pants. There were not usually shoes for the children.

FARC maintained a strong presence in the area. The guerilla group was violent and often engaged in open warfare within the community. The family finally fled the area but not before they endured witnessing Mr. Cuero being sexually assaulted by a guerilla soldier.

Disclosed tearfully for the first time to undersigned counsel, Mr. Cuero revealed that he has flashbacks and cannot wipe the assault from his memory. Most likely he is suffering from post-traumatic syndrome ("PTSD") and has never received treatment.

Mr. Cuero was forced to leave school at a young age-the sixth grade-to begin earning income for his family. He became a fisherman, a profession he maintains today. For a short period, one (1) year, Mr. Cuero was in the Columbian Navy. He had hoped to have a military career which he enjoyed and would financially support his family, but he was denied that opportunity because of his lack of education and his inability to pay the financial fees required by the Navy. So, he returned to fishing which led to this boat trip.

At the time of the boat trip, Mr. Cuero was actively supporting both financially and emotionally his two dependent children. He had significant contact with them and that is now non-existent. However, shortly prior to Mr. Cuero's involvement in the instant case, his fishing business started to experience difficulties. As a result, Mr. Cuero fell on hard financial times which ultimately lead to his involvement in the instant case.

While residing in Columbia, Mr. Cuero was approached by individuals there to assist in taking a vessel that contained bales of drugs from Colombia to Costa Rica. Because of the financial ruin that Mr. Cuero was experiencing, he agreed to enter this conspiracy. In addition to his being hired to assist in the transportation of the vessel, Mr. Cuero's co-defendants, Jose Luis Becerra Quinones, Jose Fernandez Castro, and Jose Bismar Granados were also hired in Columbia to assist in the

transportation. Specifically, Mr. Fernandez Castro was hired as the Captain[1] of the low-profile vessel, Mr. Becerra Quinones was hired as the navigator, and Mr. Bismar Granados was the lo-guard. Mr. Cuero was a mariner and helped, like all, to drive the boat.

Mr. Cuero did not own the "the low profile" vessel, he did not contribute any funds to the purchase of the drugs, he had no ownership interest in the drugs as either the buyer or the seller of the drugs; he was simply offered payment to go on the vessel to assist with the transportation of the drugs. He had little or no knowledge of the scope of the conspiracy, he did not recruit any other participants in the conspiracy and his role was simply to assist on the vessel.

The respective roles of the participants in the charged conspiracy are as follows:

> **The Colombian Sellers** of the cocaine were the individuals in Colombia who sold the cocaine and arranged for its placement on the vessel. They directly hired Morgan and placed him as the recruiter for the boat as a representative of the seller. They hired **Mr. Castro to be the Captain.**
>
> **The Costa Rican Buyers** of the cocaine negotiated the purchase of the cocaine, provided the funds to purchase the cocaine and arranged the drop off point. They were also the individuals that would arrange for distribution of the drugs.
>
> **Mr. Quinones** was the **representative** of the sellers of the

---

[1] On March 18, 2021, undersigned counsel contacted case agent Cole Duncan. Agent Duncan confirmed that during his proffer, Mr. Cuero identified Mr. Castro as the captain. Agent Duncan advised counsel that he had no reason to question Mr. Cuero's identification.

cocaine who was placed on the vessel to navigate the vessel, while **Mr. Granados** was placed on the vessel to control and supervise the cocaine during its delivery to Costa Rica.

### *Guideline Calculation*

Based on the total amount of drugs recovered, the United States Probation Office has calculated Mr. Cuero's base offense level to be a level 38. With a three-level reduction for acceptance of responsibility and a two-level safety value reduction, Mr. Cuero's total base offense level is 35. With a criminal history category I, his recommended guideline imprisonment range is 168 to 210 months (14 years- 17.5 years). But this is only the beginning point.

It is Mr. Cuero's position that the United States Probation Office has miscalculated his guidelines and that he qualifies for a minor role reduction pursuant to U.S.S.G. § 3B1.2(b), and pursuant to the newly enacted amendments to U.S.S.G. § 2D1.1(a)(3), his base offense level should be 33. With the three-level acceptance of responsibility reduction, a two-level reduction for qualifying for the safety value provision, and minor role reductions (2 + 4), Mr. Cuero's total offense level should be a 29. **With a criminal history category I and a total offense level 29, his guideline imprisonment range should be 87 months to 108 months as his guideline range. But with the three-level departure for substantial assistance, his total offense level would be 26 with a range of 63-78 months.**

5

*Memorandum of Law*

On November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G. § 2D1.1 to provide that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under § 3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. § 2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640. As such, if a defendant qualifies for either a minimal or minor role reduction, then the highest possible base offense level that the defendant may receive is a level 30. The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .
>
> [ ] The amendment modifies § 2D1(a)(3) to provide a maximum base offense level of level 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role). *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g. "mules" or "couriers" whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).*
>
> This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in 2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under § 3B1.2. The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appx. C., Amend 640 (*emphasis added*).

In the present case, pursuant to this new amendment to the Guidelines, Mr. Cuero's base offense level should be 33 since factually he clearly qualifies for a two-level minor role reduction pursuant to U.S.S.G. § 3B1.2(b). Section 3B1.2(b) provides that if the defendant was a minor participant in any criminal activity, decrease by 2 levels. The application notes to § 2B1.2(b) provide that, "the determination whether to apply a [minimal] or [minor] or intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 2B1.2(b), App. n. 3(c).

The Application notes further define a minimal participant warranting a four-level reduction to be:

> [A person] who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge and understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that this downward adjustment for minimal participant will be used infrequently.

U.S.S.G. § 3B1.2, App. n. 4.

In contrast to a minimal participant, the Application notes to the guidelines provides that a minor participant, "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal." In the present case, Mr. Cuero, while not qualifying of a minimal role reduction does

qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy for which he has plead guilty. He is less culpable than the seller of the cocaine, the buyer of the cocaine, the recruiter for the Columbian cartel, and of his named co-defendant Castro, who was the Captain of the vessel.

The seminal Eleventh Circuit case dealing with the determination of a mitigating role reduction pursuant to U.S.S.G. § 3B1.2 is *United States v. Rodriguez De Varon,* 175 F.3d 930 (11th Cir. 1999). In the *De Varon* case, the Eleventh Circuit established a two-part test for determining whether a defendant qualifies for a minor role reduction. *De Varon*, 175 F.3d at 934. As the Eleventh Circuit noted, "First, and foremost, the district court must measure the defendant's role against her relevant conduct, that is, the conduct for which she has been held accountable under U.S.S.G. § 1B1.3. *Id*., at 940-941. The Eleventh Circuit further stated the second part of the test requires, that "where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant" *Id*.

### *Defendant's Role Against Relevant Conduct*

In applying the first step of the two-step analysis, this Court must measure Mr. Cuero's role against the relevant conduct for which he has been held accountable. In the present case, Mr. Cuero is being held accountable for the entire quantity of cocaine found at the time of his arrest, that being 1,412 kilograms of

cocaine. The purpose of this first step of analysis is designed to assure that one of the main goals of the guidelines, that similarly situated defendants are punished in a like-minded way, is fulfilled. As the *De Varon* Court noted, given the relatively broad definition of relevant conduct, some defendants may be held accountable for conduct that is much broader than their specific acts. *Id.* at 941. As the *De Varon* Court further explained, "[a] conspiracy conviction is the classic example of this phenomenon. In such cases, a defendant's relevant conduct may be coextensive with the entire conspiracy even though her role in that conspiracy was relatively minor. Under these circumstances, a district court may adjust the defendant's sentence for her mitigating role in this broad conspiracy." *Id.* The Court further noted, "this adjustment allows a district court to impose a sentence that more closely mirrors the defendant's actual conduct, furthering the Guideline's role of imposing comparable sentences for similar acts." *Id.*

Put another way, the purpose of the mitigating role adjustment is to ensure that a low-level participant in a conspiracy does not receive the same sentence as a high-level participant in a conspiracy. Otherwise, based on the fact that all of the defendants in a conspiracy are held accountable for the total quantity of drugs involved, non-similarly situated defendants would be receiving the same sentence despite the minor role that some of the defendants may have had. Since Mr. Cuero is being held accountable for the entire 1,412 kilograms of cocaine, his role must be

9

compared to all of the other participants of the group of individuals involved with this 1,412 kilograms of cocaine. This analysis involves the second part of the two-part analysis set out by the Eleventh Circuit in the *De Varon* case.

### *Role as Compared to Other Participants in the Relevant Conduct*

As noted earlier, the second part of the two-part analysis requires this Court, if there is enough record evidence, to compare a defendant's culpability to the other participants in the relevant conduct. As the *De Varon* Court noted, "not all participants may be relevant to this inquiry." *Id.* at 944. First, the district court should look to other participants only to the extent that they are identifiable or discernable from the evidence, which as the *De Varon* court noted, is a "fact-intensive inquiry." *Id.* Second, the district court may consider only those participants who were involved in the relevant conduct attributed to the defendant. The conduct of participants in any larger criminal conspiracy is irrelevant. *Id.*

In the present case, the participants in the relevant conduct (i.e., the 1,412 kilograms) which are identifiable are the Costa Rican purchasers of the cocaine; the Colombian sellers of the cocaine; Morgan, the Colombian representative who recruited Mr. Cuero; Jose Castro who was the Captain of the vessel; Jose Becerra Quinones who was hired as the navigator and Jose Bismar Granados as the lo-guard on the vessel; and finally, the defendant, Darwin Cuero who was paid to travel on the vessel as a mariner. In analyzing the various roles in the drug courier context,

the *De Varon* Court set forth several relevant factors that a district court may consider which include but are not limited to "the amount of drugs, the fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." *De Varon,* 175 F.3d at 945.

In the present case, all of the above factors weigh in favor of Mr. Cuero's minor role status. Factually, Mr. Cuero was paid a small amount to participate in a conspiracy which involved several hundred thousand if not millions of dollars of cocaine. He had no equity interest in the drugs, he had no role in planning the criminal scheme, and absolutely no role in the ultimate distribution of the cocaine. He was paid a relatively small amount of money to travel on a boat which did not belong to him, one he was not the captain of, to transport drugs he was neither purchasing nor selling to the purchasers of the drugs who then would ultimately distribute them to another participant. Other factors supporting Mr. Cuero's minor role status include the fact that he did not recruit any other participants, he had little knowledge of the scope of the broader conspiracy and, at all stages of the conspiracy, he reported to a larger player in the conspiracy. No one reported to him. Clearly, under these facts, Mr. Cuero was less culpable then most other participants. Specifically, he was less culpable than the purchaser of the cocaine, the seller of the cocaine, the recruiter for the trip, the captain of the vessel and potentially even less

culpable than the lo-guard and the navigator on the vessel.

Since Mr. Cuero receives a two-level reduction for minor role (new level 33), he also receives a corresponding four-level reduction pursuant to USSG §2D1.1(a)(5)(B)(iii). The new range of advisory guidelines imprisonment would be **87 months to 108 months. With the government's three (3) level departure for substantial assistance, the final total offense level is 26 with a range of imprisonment of 63-78 months.**

*18 U.S.C. § 3553(a) factors in support of a sentence of 78 months.*

As noted in the Presentence Report, a variance can be supported by Mr. Cuero's dire life circumstances of extreme poverty and sexual assault by a Colombian guerilla. In addition, he was a low-level participant in a non-violent crime. Moreover, it is important to note that at the time of this trip, Mr. Cuero had no idea or belief that he was committing a crime against the United States and the inherent serious consequence.

*Disparity Among Similar Defendants*

A trial court should consider "…the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" 18 U.S.C. § 3553(a)(6). Disparity among similar defendants is an important 3553(a) factor to consider. In this case, co-defendant Mr. Fernandez Castro was sentenced to a term of imprisonment of 96 months. (Doc 96) In support

of his variance, Mr. Castro cited to several boat cases in the Middle of District of Florida that had resulted in variances of sentences to a range of 51 months to 97 months. (Doc 85). Mr. Cuero incorporates those statistics but submits that Mr. Cuero's sentence should be less than Mr. Castro's sentence to avoid disparity among co-defendants. Both defendants received a three-level departure for substantial assistance. However, as confirmed by Agent Duncan, Mr. Castro was the captain of the vessel. On information and belief, he did not receive a two-level enhancement for captain. Moreover, it is customary for the captain to receive a higher sentence unless substantial assistance alters the equation amongst the other defendants. In this case, Mr. Cuero was not the captain. A sentence of 78 months is approximately two-level reduction from a 96 month sentence. A sentence of 78 months is a reasonable and consistent sentence for a participant who was not a captain.

WHEREFORE, based on the foregoing arguments and legal authority, Mr. Cuero's motion should be granted as stated.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

**s/ Kathleen M. Sweeney**
Kathleen M. Sweeney, Esq.
IN Bar No. 0219249
Assistant Federal Public Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Phone: (813) 228-2715

Facsimile: (813) 228-2562
Email: Kathleen_Sweeney@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 19, 2021, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to:

Diego F. Novaes, AUSA

*/s Kathleen M. Sweeney*
Kathleen M. Sweeney
Assistant Federal Defender
